728 P.2d 462

**Leo DOW and Arthur Dow,
Plaintiffs-Appellees,**

v.

**CHILILI COOPERATIVE ASSOCIA-
TION, Pedro Gutierrez, Jr., Adelicio
Moya, Max Trujillo, Luciano Ortiz, Al-
bert Joe Mora, Orlando Gurule, Elias
Gutierrez, all individually and in their
capacity as officers and members of the
Chilili Cooperative Association, Eloy
Gutierrez, Jr., Richard Gutierrez, Gilbert
Gutierrez, Alfredo Ortiz, Gilbert Ortiz
and John Does 1–10, Defendants-Appel-
lants.**

No. 16057.

Supreme Court of New Mexico.

Nov. 10, 1986.

Toulouse, Toulouse & Garcia, Narcisco Garcia, Jr., Albuquerque, for defendants-appellants.

Moses, Dunn, Beckley, Espinosa & Tuthill, Joseph Werntz, Albuquerque, for plaintiff-appellee Leo Dow.

Miguel Campos, Albuquerque, for plaintiff-appellee Arthur Dow.

## OPINION

SOSA, Senior Justice.

Leo and Arthur Dow (Dows) commenced this action by seeking a temporary restraining order to prevent the Chilili Cooperative Association (Association) from interfering with the Dows' use and enjoyment of their lands and from entering or allowing others to enter into the Dows' land. The Association counterclaimed against Leo Dow in three counts. The first two counts challenged Dow's conduct while serving as president of the Association. Dow moved for partial summary judgment on count three, which concerned Leo Dow's purchase of the disputed property. The court granted Dow's motion, ruling that the claim was barred by the statute of limitations. The Association appeals; we affirm.

The sole issue is whether the trial court erred in granting the motion for summary judgment.

## FACTS

Leo Dow was president of the Association from 1958 to 1968. On February 22, 1969, the Association executed a real estate contract for a parcel of land (approximately 545 acres) that is the subject of this appeal to Ernest and Gloria Leger. Ben Torrez, as president, and Carmen Gallegos, as secretary of the Association, signed the contract. On June 29, 1970, the contract was supplemented. On September 10, 1970, the contract and supplement were recorded.

The Legers assigned their interest in the real estate contract to Leo Dow on April 4, 1973. This assignment was recorded on July 3, 1974. Legers gave Dow a warranty deed dated April 17, 1973; it was recorded on July 8, 1974.

By letter of February 3, 1976, the Association's attorney requested a title insurance policy from New Mexico Abstract Company in Estancia, New Mexico. The letter refers specifically to the Leger's assignment of the contract to Dow on April 4, 1973. New Mexico Abstract secured a title policy dated June 16, 1976 and mailed it to the Association on June 29, 1976. Dow paid off the real estate contract on July 2, 1979 and received the deed from the Association to the Legers.

Finally, on September 19, 1983, Dows instituted this action for injunctive relief against the Association, alleging that Association members were preventing them from entering the property to cut wood and were attempting to establish a permit system under which others would be allowed to enter and cut wood on the land. The temporary restraining order was granted on September 19, 1983 and confirmed by preliminary injunction on September 29, 1983. The Association filed its counterclaim on October 4, 1983. It contained three counts:

I. A request for compensatory and punitive damages because, while president, Leo Dow allegedly conveyed away real

property of the Association for inadequate value and without proper record keeping, in breach of his fiduciary duty;

II. A demand for an accounting of all transactions over which Dow presided; and,

III. A prayer to set aside the allegedly fraudulent conveyances from the Association to Legers and from Legers to Dow.

Dow moved for partial summary judgment as to Count III on April 25, 1985. The court held a hearing on the motion on July 2, 1985. By order of July 19, 1985, the court granted the motion and, finding no just reason for delay, entered a final judgment in favor of Dow on Count III, pursuant to NMSA 1978, Civ.P.Rule 54(b)(1) (Repl.Pamp.1980), from which the Association appeals.

Appellant Association attacks the summary judgment from both flanks, arguing that the movant is not entitled to judgment as a matter of law and also that there remain genuine issues of material fact. *See Oschwald v. Christie*, 95 N.M. 251, 620 P.2d 1276 (1980); *see also Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). We address these arguments in the order raised by the Association.

## A. Judgment as a matter of law.

■ The trial court stated that it was granting summary judgment on the basis of the statute of limitations. The Association concedes that the applicable statute specifies a four year limitation. NMSA 1978, § 37–1–4. Nevertheless, the Association urges the application of a second statute which tolls the limitation period for cases involving fraudulent concealment:

In actions for relief, on the ground of fraud or mistake, and in actions for injuries to, or conversion of property, the cause of action shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved.

NMSA 1978, § 37–1–7.

In support of its position, the Association contends that it only "discovered" Dow's allegedly fraudulent actions within the past four years. This "discovery" was presented to the trial court through the affidavit of F.M. Trujillo, the present secretary of the Association. The court granted Dow's motion to strike most of the affidavit because it was not based upon personal knowledge.

There is nothing else in the record to indicate that Dow did anything, either actively or passively, to conceal his transactions from the Association, so as to justify the equitable tolling of the statute of limitations as provided by Section 37–1–7. In fact, the record indicates that the Association had actual knowledge of Dow's ownership, at least as long ago as June 29, 1976. "In a motion for summary judgment, the party claiming that a statute of limitations should be tolled has the burden of alleging sufficient facts that if proven would toll the statute." *Stringer v. Dudoich*, 92 N.M. 98, 99, 583 P.2d 462, 463 (1978). Here the Association failed to carry its burden. Thus we conclude that the trial court was correct in granting summary judgment as a matter of law.

## B. Existence of material facts in dispute.

Despite the analysis above, the Association maintains that summary judgment was improper because Trujillo's affidavit at least puts into issue the factual question of when the Association knew, or by reasonable diligence should have learned, that it had a cause of action. The affidavit itself states that "[m]y investigation has revealed the following," but then it simply recites allegations similar to those of the counterclaim, with no reference to extrinsic facts by which the allegations could be proved.

■ Once Dow had made a prima facie showing that he was entitled to summary judgment, the burden then shifted to the Association to demonstrate the existence of specific evidentiary facts which would require a trial on the merits. *Spears v. Canon de Carnue Land Grant*, 80 N.M. 766,

461 P.2d 415 (1969). A party may not simply argue that such facts might exist, nor may it rest upon the allegations of the complaint. *Oschwald v. Christie.* Furthermore, the Association cannot convert the hearsay testimony of one of its officers into admissible evidence by the expedient of labeling the testimony as the fruit of an investigation.

■ We find the Association's contention to be disingenuous and unconvincing. It offers no plausible explanation for why (or even how) Dow's alleged constructive fraud was only "discovered" within the last four years, nor does it indicate why the matter was not raised directly, instead of waiting to counterclaim after Dows had filed suit.

Finally, we observe that the Association is not out of court altogether. If it can prove that Dow defrauded it or breached his fiduciary duties, then the remedy of damages remains available. The trial court simply concluded that the Association failed to make a showing sufficient to cause the court to exercise its equitable powers and overturn a long established sequence of publicly recorded transactions.

For the foregoing reasons, the judgment of the trial court is affirmed and the matter is remanded for trial of the remaining issues.

IT IS SO ORDERED.

RIORDAN, C.J., and FEDERICI, J., concur.